# JOANNE JACOBSON *v.* ZONING BOARD OF APPEALS OF THE TOWN OF WASHINGTON ET AL.
## (AC 32877)

DiPentima, C. J., and Beach and Borden, Js.

Argued March 13—officially released July 31, 2012

*Robert H. Hall,* for the appellant (plaintiff).

*Michael A. Zizka,* with whom were *Michael C. Markowicz* and, on the brief, *Kari L. Olson,* for the appellee (named defendant).

*Gail E. McTaggart,* for the appellee (defendant Zemma Mastin White).

*Opinion*

DiPENTIMA, C. J. General Statutes § 51-183b "requires a court to render a judgment within 120 days of the completion of trial, but also allows the parties to waive that requirement." *Ridgefield* v. *Eppoliti Realty Co.,* 71 Conn. App. 321, 341, 801 A.2d 902, cert. denied, 261 Conn. 933, 806 A.2d 1070 (2002). The dispositive issue in the present case is whether the trial court properly found that the plaintiff, Joanne Jacobson, implicitly waived the 120 day requirement of § 51-183b.[1] We conclude that, under the facts and circumstances of this case, the court's finding of waiver was clearly erroneous, and, therefore, we reverse the judgment of the trial court.

The following facts and procedural history are necessary for our discussion. In 2006, the defendant Zemma Mastin White applied to the defendant zoning board of

[1] General Statutes § 51-183b provides: "Any judge of the Superior Court and any judge trial referee who has the power to render judgment, who has commenced the trial of any civil cause, shall have power to continue such trial and shall render judgment not later than one hundred and twenty days from the completion date of the trial of such civil cause. The parties may waive the provisions of this section."

appeals of the town of Washington (board) for a variance to construct a garage. The board unanimously granted the variance and the plaintiff, an abutting landowner, appealed from that decision to the Superior Court. At that time, the court remanded the case to the board with instruction to consider the 2006 application without regard to an earlier proceeding in which the board had granted a variance application in 1988 and had not commented on whether it had found a hardship.[2]

In accordance with the remand from the Superior Court, the board conducted a public hearing on October 30, 2008. Afterwards, the board discussed whether a hardship existed due to the small lot size and whether the hardship was self-created. Ultimately, the members of the board concluded that they had found a hardship in 2006 without regard to the 1988 variance and voted unanimously to affirm the 2006 decision, finding that a hardship had not been self-created. The plaintiff then appealed from that decision to the Superior Court.

On November 19, 2009, the court conducted a trial of the plaintiff's appeal from the board's decision. No briefs were filed after that date, nor were there any further proceedings that would extend the 120 day rule of § 51-183b. In its memorandum of decision issued on May 21, 2010, the court concluded that the 2006 record contained sufficient evidence to support the finding of a hardship and that the hardship was not self-created. Accordingly, the court determined that the board's decision was reasonable and supported by the evidence. The court dismissed the appeal filed by the plaintiff.

---

[2] "In light of [General Statutes] § 8-6, it has been held that [p]roof of exceptional difficulty or unusual hardship is absolutely necessary as a condition precedent to the granting of a zoning variance." (Internal quotation marks omitted.) *Michler* v. *Planning & Zoning Board of Appeals*, 123 Conn. App. 182, 186, 1 A.3d 1116 (2010).

This decision was issued 189 days after the conclusion of the proceedings before the court.

On June 7, 2010, approximately two weeks after the court issued its decision, the plaintiff filed a motion to set aside the judgment of the court. She argued that, pursuant to § 51-183b, the court's decision should have been rendered no later than March 13, 2010. The plaintiff's motion then set forth the following details regarding the timing of the court's decision: "On or about March 30, 2010, [a]ttorney James Strub representing [White] called the [plaintiff's counsel], and the [plaintiff's counsel] and [a]ttorney Strub had a conversation to the effect that the decision of the court was late, that the clerk of the court had suggested consent to a [thirty] day extension, that we both believed [thirty] days was way too short, and that it was the clerk's belief that the [j]udge would not decide the case unless all parties agreed to be bound by the [c]ourt's decision. . . .

"On or about April 12, 2010, the [plaintiff's counsel] had a conversation with [a]ttorney Gail McTaggart, also representing [White], wherein [the plaintiff's counsel] stated that he would not consent to a late judgment and that he was 'going to sit and take no position' on any request for an extension of time. . . . Subsequent to April 12, 2010, the attorneys for both defendants agreed to extend the date for rendering judgment by an additional sixty (60) days, but the [plaintiff's counsel] has never consented or waived the statutory time limit for judgment after trial." The plaintiff concluded her argument by stating that the court did not render its judgment until May 21, 2010, and that therefore it was sixty-nine days late.

Both White and the board filed an objection to the plaintiff's motion to set aside the judgment of the court. On June 20, 2010, the plaintiff filed an amendment to

her motion and attached a copy of a letter from Strub to the clerk of the court. In that letter, dated April 19, 2010, Strub wrote that both White and the board consented to a sixty day extension for the court to issue its decision. The letter also stated: "Both . . . McTaggart and I have, on separate occasions, discussed the issue with [the plaintiff's counsel]. As of the date of this correspondence, [the plaintiff's counsel] had no position on the extension. I believe [the plaintiff's counsel] has been unable to communicate the request with [the plaintiff]."

On July 15, 2010, the court held a hearing on the plaintiff's motion to set aside the judgment. At this hearing, the plaintiff's counsel stated that the clerk of the court had not communicated with him regarding a waiver of the 120 day rule of § 51-183b; his only communication was with Strub and McTaggart. During a colloquy with the court, the plaintiff's counsel noted that he had spoken with Strub and later with McTaggart. The plaintiff's counsel later clarified his position by acknowledging that he was "going to sit on" the waiver request and not take a position on it. The court then asked him if he understood that the request came from the court, and the plaintiff's counsel indicated that he did. He also agreed with the court's statement that he had not responded to the court's request for an extension. After further discussion, the plaintiff's counsel set forth his position as follows: "I do not have any duty to object [to the late judgment], Your Honor. I have no duty to object to that—to Your Honor's late decision— none, zero." He then reiterated that he had not spoken with the clerk regarding a request for an extension and that everything had been "through either Attorney Strub or Attorney McTaggart."

In reaching the decision to deny the plaintiff's motion to set aside the verdict, the court stated: "I'm denying your motion, and the reason I am doing that, is

because—and I want you to be really clear on this—because I have a feeling that you are going to take this up. I don't think this is going—this case has been going on so long. But I want to make it—make it clear that it was your conduct, counsel, prior to the rendering of the judgment. You know, when you say, I will take no position, you leave the court without the possibility of, you know, the court has to just keep going, and that conduct, I believe, constituted a waiver. So, for that reason, I'm denying your motion . . . ." This appeal followed.

We begin our analysis with a discussion of *Waterman* v. *United Caribbean, Inc.*, 215 Conn. 688, 577 A.2d 1047 (1990), the seminal case interpreting § 51-183b. In that case, our Supreme Court observed that "in order to reduce delay and its attendant costs, [§ 51-183b] imposes time limits on the power of a trial judge to render judgment in a civil case." Id., 691. It also noted that the genesis of this statute may be traced to 1879. Id. The court stated that it had "held that the defect in a late judgment is that it implicates the trial court's power to continue to exercise jurisdiction over the parties before it. . . . We have characterized a late judgment as voidable rather than as void . . . and have permitted the lateness of a judgment to be waived by the conduct or the consent of the parties. . . . Thus, if both parties simultaneously expressly consent to a late judgment, either before the judgment is issued, or immediately thereafter, the judgment is valid and binding upon both parties, despite its lateness. Express consent, however, is not required. If a late judgment has been rendered and the parties fail to object seasonably, consent may be implied." (Citations omitted.) Id., 692.

Our Supreme Court continued its analysis with respect to the issue of waiver. "We have concluded that

waiver has validated a judgment voidable under § 51-183b and its predecessors in one of two factual contexts. In the first context, the losing party has promptly sought to set aside an unfavorable judgment, only to be met by the winning party's claim of waiver by virtue of the losing party's prejudgment conduct. . . . In the second context, the losing party has allowed the defective judgment to stand without objection for an unseasonable period of time and through inaction has enabled the winning party to claim implied consent to the delay that has occurred." (Citations omitted.) Id., 693.

We now turn to the recent decision from this court in *Foote* v. *Commissioner of Correction*, 125 Conn. App. 296, 8 A.3d 524 (2010). In that case, neither party objected prior to a late decision rendered 200 days after the completion of the trial by the habeas court. Id., 299. The petitioner, however, raised an objection nine days after the release of the court's decision. Id. Applying the principles of *Waterman* v. *United Caribbean, Inc.*, supra, 215 Conn. 692–93, we set forth the following syllogism: "(1) a late judgment is voidable, not void, (2) a court maintains personal jurisdiction over the parties until and unless they object, (3) but a late judgment may be waived by conduct or consent, (4) therefore, absent waiver, a voidable judgment becomes void upon objection." *Foote* v. *Commissioner of Correction*, supra, 301. We then rejected the argument of the respondent commissioner of correction that the petitioner had waived any objection to the timing of the decision given his silence during the eighty day time period that the judgment was not rendered outside of the § 51-183b time period. Id.

We used the following analysis in support of our conclusion that prejudgment silence alone does not constitute a waiver of the statutory 120 day rule. "[A] waiver is not ordinarily to be inferred from the mere inaction of a party prior to the time the judge files with

the clerk his memorandum of decision. . . . Implications from silence or inaction . . . import some duty or occasion to speak or act, and in order to imply consent that rendition of judgment . . . might be deferred beyond the limit of time imposed by statute, there must be found to exist some obligation on the part of the [parties] or their counsel either seasonably to admonish the trial judge that the statute must be complied with or, after the [time limit imposed by statute] and before judgment, to interpose objection to its entry thereafter. We find no justification for so far extending the duty of a party or his counsel. The impracticability, if not the impropriety, of the first course is obvious; as to the second, it seems that *the most that can reasonably be required is objection seasonably made after the filing of the decision.* . . . Therefore, [u]nless some situation develops which in reason requires the party to protest and he does not protest, or unless he consents to the delay either expressly or impliedly, as by agreeing to an additional hearing or by a tardy filing of his brief, no waiver will be spelled out. . . . A review of the case law . . . is consistent with such observations concerning waiver. In each of the . . . cases [we reviewed], waiver was not based on silence per se but on some other act or conduct that either delayed the start of the 120 day deadline, created a duty to protest in the silent party or served as an affirmative act of waiver or consent." (Citations omitted; emphasis in original; internal quotation marks omitted.) Id., 302–303.

Given this precedent, the key question in the present case is whether the prejudgment communication between only the clerk of the court and counsel for White regarding the court's request for an extension to issue its decision triggered an obligation on the plaintiff to speak or to raise an objection prior to the judgment of the court. We conclude that when a request for an

extension of the § 51-183b time period from the court is done in such a manner, no such duty arises.

"Waiver is the intentional relinquishment of a known right. . . . Intention to relinquish [must] appear, but acts and conduct inconsistent with intention [to assert a right] are sufficient. . . . Thus, [w]aiver does not have to be express, but may consist of acts or conduct from which waiver may be implied. . . . In other words, waiver may be inferred from the circumstances if it is reasonable to do so. . . . Whether conduct constitutes a waiver is a question of fact. . . . Our review therefore is limited to whether the judgment is clearly erroneous or contrary to law." (Citations omitted; internal quotation marks omitted.) Id., 302.

In the present case, in order to obtain an extension for the court to issue its decision, the clerk communicated with Strub only. There is no clear record as to the specific period of time requested. See, e.g., *Cowles* v. *Cowles*, 71 Conn. App. 24, 25–27, 799 A.2d 1119 (2002). In the motion to set aside the judgment, the plaintiff's counsel alleged that on or about March 30, 2010, he spoke with Strub about a thirty day extension. He further claimed that a second conversation occurred between the plaintiff's counsel and McTaggart approximately two weeks later. The plaintiff's counsel contended that, during this second conversation, he indicated that he would not consent and intended to "sit and take no position." Strub subsequently sent a letter dated April 19, 2010, to the clerk indicating that White and the board, acting though its counsel, had agreed to a sixty day extension. The letter further stated that the plaintiff's counsel had taken no position. The court found that the conduct of the plaintiff's counsel, in refusing to take a position on the communication from the court via opposing counsel, constituted a waiver.

As noted previously, waiver is the *intentional relinquishment of a known right.* See *Foote* v. *Commissioner of Correction,* supra, 125 Conn. App. 302. In this case, the court made its request for an extension of the 120 day rule through a single party, who then orally communicated that request to the other parties in the case. Although the plaintiff acknowledged, via the motion to set aside the judgment and her counsel's statements during the hearing, that she was aware that some additional time had been requested by the court, the record does not establish any specific facts as to that request. We are not persuaded that such a vague and indefinite communication triggered an obligation for the plaintiff to respond. See, e.g., id., 305–307 (prejudgment silence while under no duty to speak does not amount to waiver). We also note that the procedures used here present a high risk of miscommunication, thereby complicating findings of waiver under § 51-183b.

We need not set forth the exact procedure that the trial court must employ when seeking an extension from the 120 day requirement of § 51-183b. For the purpose of deciding this appeal, it is sufficient to hold that when such a request is made by the court to only one party, the opposing party does not assume a duty to object to or to protest the late judgment. Our holding follows the rationale behind the rule described in *Foote.* Accordingly, because the court's finding of waiver was based solely on the prejudgment refusal to respond to the request made by the court through a single party, we conclude that the court's finding was clearly erroneous.[3]

---

[3] Although not directly before us, we are troubled by the position taken by the plaintiff's counsel that a party is never required to respond to a court's request for a waiver under § 51-183b. When such a request properly is presented to parties who are subject to the court's jurisdiction, they should not be allowed to put the court in an untenable position by refusing to accept or to reject the court's request until the rendering of judgment. See *Wasko* v. *Farley,* 108 Conn. App. 156, 166, 947 A.2d 978 ("Our Supreme Court has criticized the practice whereby an attorney, cognizant of circum-

Because of the erroneous finding of waiver, a fortiori, we also conclude that the court improperly denied the plaintiff's motion to set aside the judgment. See id., 307; *Cowles* v. *Cowles*, supra, 71 Conn. App. 26–27. Following the seasonable postjudgment objection, the plaintiff turned the voidable judgment into a void judgment. A new trial is required.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.

stances giving rise to an objection before or during trial, waits until after an unfavorable judgment to raise the issue. We have made it clear that we will not permit parties to anticipate a favorable decision, reserving a right to impeach it or set it aside if it happens to be against them, for a cause which was well known to them before or during the trial." [Internal quotation marks omitted.]), cert. denied, 289 Conn. 922, 958 A.2d 155 (2008). Our decision today should not be read to endorse or countenance such tactics. The more appropriate course of action is for counsel to respond to the court's request, either by explicitly agreeing to or denying the request.

