******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# TOWN OF WETHERSFIELD EX REL. DEBORAH MONDE, ANIMAL CONTROL OFFICER
## *v.* SUZANNE ESER
### (AC 43705)

Bright, C. J., and Cradle and DiPentima, Js.

*Syllabus*

The plaintiff town filed a verified petition pursuant to statute (§ 22-329a) seeking, inter alia, custody in favor of the plaintiff of twenty-four animals that had been taken from the defendant by its animal control officer, M, and that allegedly were neglected and/or cruelly treated. The plaintiff also sought an order requiring the defendant to reimburse the plaintiff for its expenses in caring for the seized animals in the amount of $15 per day per animal in accordance with § 22-329a (h), which provides a direct remedy for a municipality seeking reimbursement for care that it provides to animals adjudicated as abused or neglected. M took custody of the animals after the animals were found in the defendant's van in filthy and unhygienic conditions following a traffic stop. The defendant moved to dismiss the plaintiff's petition, arguing that the trial court lacked subject matter jurisdiction because the plaintiff failed to file the petition within ninety-six hours of the plaintiff's having taken custody of the animals pursuant to § 22-329a (a). The trial court denied the defendant's motion to dismiss, reasoning that the ninety-six hour requirement in § 22-329a was directory rather than mandatory. Subsequently, the trial court held an evidentiary hearing on the verified petition and the court's order to show cause as to why the relief sought should not be granted. At the evidentiary hearing, the owner of a private kennel at which the animals were housed, testified that the defendant had paid for the board and care of the animals at her kennel in the months following their seizure. The trial court determined that the animals were neglected and cruelly treated and transferred ownership of the animals to the plaintiff and declined to award the plaintiff any monetary compensation, concluding that the defendant voluntarily had paid for the care and custody of the animals at the private kennel, which exceeded $15 per day per animal. Following the trial court's judgment transferring ownership of the animals to the plaintiff, the surviving animals were placed in permanent adoptive homes. On her appeal to this court, the defendant seeks the relief of both having the animals returned to her and a hearing requesting compensation for the moneys that she had spent on the care of the animals following the plaintiff's taking custody of them. During the pendency of the present appeal, the plaintiff moved to dismiss the defendant's appeal as moot, arguing that there was no practical relief that this court could grant to the defendant. *Held*:

1. The plaintiff could not prevail on its claim that the appeal was moot on the ground that this court could not grant the defendant any practical relief because, following the trial court's judgment transferring ownership of the animals to the plaintiff, the defendant's animals either have died or were placed in permanent adoptive homes; there was practical relief that could have been afforded to the defendant should she have prevailed in this appeal in the form of a remand for a hearing regarding the amount of moneys she paid for the care and custody of the animals.

2. The trial court correctly determined that it had subject matter jurisdiction over the plaintiff's verified petition and properly denied the defendant's motion to dismiss claiming that the trial court lacked subject matter jurisdiction because the plaintiff failed to comply with the mandatory ninety-six hour requirement in § 22-329a (a): because of the strong presumption in favor of jurisdiction, there must be a strong showing of legislative intent to create a time limitation that, in the event of noncompliance, would act as a subject matter jurisdictional bar; an examination of the legislative history of § 22-329a (a) evidenced that the primary purpose of the statute was to protect animals from imminent harm and, therefore, if the failure to file a verified petition within the ninety-six hour time frame deprived the trial court of subject matter jurisdiction, animals would be returned to the environment in which they were in

imminent harm, thwarting the very purpose of § 22-329a (a); moreover, although the statute's requirement to file a verified petition is stated solely in affirmative words, there is no language that expressly prohibited the plaintiff from filing a verified petition after ninety-six hours have passed; accordingly, the failure to comply with the ninety-six hour period for filing a verified petition in § 22-329a (a) did not divest the trial court of subject matter jurisdiction.

3. The defendant could not prevail on her unpreserved claim that her right to procedural due process under the fourteenth amendment to the United States constitution was violated because the plaintiff failed to file the verified petition within ninety-six hours and a hearing was not held within fourteen days as required by § 22-329a (d), which deprived the defendant of funds that she was required to pay according to § 22-329a (h); although the defendant claimed that she suffered deprivation due to the procedures, namely, the increased cost of housing the animals at the private kennel, the defendant's claim failed under the third prong of *State* v. *Golding* (213 Conn. 233) because the defendant voluntarily paid for the care, custody, and other expenses of the seized animals, and, therefore, the defendant could not be constitutionally deprived of funds that she voluntarily paid.

Argued January 11—officially released April 5, 2022

*Procedural History*

Verified petition seeking, inter alia, custody in favor of the plaintiff of certain animals taken from the defendant's possession that were allegedly neglected and/ or cruelly treated, and for other relief, brought to the Superior Court in the judicial district of New Britain, where the court, *Aurigemma, J.*, denied the defendant's motion to dismiss; thereafter, the court, *Aurigemma, J.*, rendered judgment in part for the plaintiff, from which the defendant appealed to this court. *Affirmed.*

*David V. DeRosa*, for the appellant (defendant).

*John W. Bradley, Jr.*, with whom, on the brief, were *A. Ryan McGuigan* and *Thomas A. Plotkin*, for the appellee (plaintiff).

*Opinion*

DiPENTIMA, J. In this animal welfare action, the defendant, Suzanne Eser, appeals from the judgment of the trial court rendered in favor of the plaintiff, the town of Wethersfield, following the court's denial of her motion to dismiss the plaintiff's verified petition for lack of subject matter jurisdiction. On appeal, the plaintiff argues that the appeal is moot, and the defendant claims that (1) the trial court incorrectly determined that the plaintiff's failure to file a verified petition within ninety-six hours of taking custody of the animals, as required by General Statutes (Supp. 2022) § 22-329a (a),[1] did not deprive it of subject matter jurisdiction and, alternatively, (2) she was deprived of procedural due process. We affirm the judgment of the trial court.

The following undisputed facts and procedural history are relevant. On May 27, 2019, the plaintiff's animal control officer, Deborah Monde, took custody of twenty-four animals, including twenty-one dogs, two cats and one parrot, which were found, as a result of a traffic stop, to have been housed in the defendant's van in filthy and unhygienic conditions.[2] Upon the belief that the animals were in imminent harm and were neglected and/or cruelly treated, Monde took custody of them pursuant to § 22-329a (a). In a parallel criminal proceeding, the defendant was arrested and charged with eighteen counts of cruelty to animals in violation of General Statutes § 53-247 (a).

On July 18, 2019, the plaintiff filed a verified petition pursuant to § 22-329a (c),[3] seeking an order vesting in the plaintiff or the Department of Agriculture's animal control division (state animal control) the temporary and permanent custody of the seized animals and an order that the defendant pay monetary compensation to the plaintiff or the state animal control in the amount of $15 per animal per day from the date that the animals were seized until the date that permanent ownership vests in the plaintiff or the state animal control. On July 19, 2019, the court issued an order to show cause why the relief sought in the verified petition should not be granted, commanding the defendant to appear before the court on August 19, 2019. By consent of both parties, the plaintiff filed on August 6, 2019, a motion for a continuance, which motion the court granted.

On August 30, 2019, the defendant filed a motion to dismiss the petition arguing that the court lacked subject matter jurisdiction because the petition had not been filed within ninety-six hours of the plaintiff's having taken custody of the animals as required by § 22-329a (a). The court denied the motion to dismiss for lack of subject matter jurisdiction, reasoning that the ninety-six hour requirement in § 22-329a was directory rather than mandatory.

Beginning on December 10, 2019, after the plaintiff

filed a motion for an expedited hearing on the petition, the parties engaged in a two day evidentiary hearing before the court on the plaintiff's petition and the court's order to show cause. On December 11, 2019, the court issued its findings of fact and conclusions of law from the bench, finding that the animals were neglected and cruelly treated and transferring ownership of them to the plaintiff.[4] The court concluded that there was evidence that the amount that the defendant voluntarily had paid for the care and custody of the animals exceeded $15 per day per animal and, accordingly, declined to award the plaintiff any monetary compensation. This appeal followed. Additional facts will be set forth as necessary.

I

As a preliminary matter, we address the issue of mootness. During the pendency of the present appeal, the plaintiff filed a motion to dismiss the appeal as moot. In that motion, the plaintiff argued that there is no practical relief that this court can grant to the defendant because, following the court's judgment transferring ownership of the animals to the plaintiff, the animals were transferred from the private kennel in which they were housed to the Connecticut Humane Society and subsequently were placed in permanent adoptive homes. This court denied the motion. At oral argument before this court, the plaintiff's counsel argued that this court should have granted the motion to dismiss the appeal as moot, arguing that there is no practical relief that we can afford to the defendant. We are not persuaded.

"The question of mootness . . . may be raised at any time . . . ." (Internal quotation marks omitted.) *Wozniak* v. *Colchester*, 193 Conn. App. 842, 852, 220 A.3d 132, cert. denied, 334 Conn. 906, 220 A.3d 37 (2019). "Mootness implicates [the] court's subject matter jurisdiction and is thus a threshold matter for us to resolve. . . . It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . An actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal. . . . When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot. . . . Because mootness implicates subject matter jurisdiction, it presents a question of law over which our review is plenary." (Citation omitted; internal quotation marks omitted.) *New Hartford* v. *Connecticut Resources Recovery Authority*, 291 Conn. 502, 506–507, 970 A.2d 578 (2009). "It is well established that an appeal is considered moot

if there is no possible relief that the appeals court can grant to the appealing party, even if the court were to be persuaded that the appellant's arguments are correct." *Wallingford Center Associates* v. *Board of Tax Review*, 68 Conn. App. 803, 807, 793 A.2d 260 (2002).

On appeal, the defendant seeks the relief of both having the animals returned to her and a hearing requesting compensation for the moneys that she had spent on the care of the animals following the plaintiff's taking custody of them.[5] The requested relief of the return of the animals to the defendant raises multiple questions. First, because all of the animals either are deceased or have been placed in permanent adoptive homes,[6] the plaintiff no longer has an ownership interest in them. Additionally, the court file in the criminal proceedings, of which we take judicial notice,[7] reveals that on December 3, 2021, the criminal trial court sentenced the defendant to a total effective sentence of six years' incarceration, execution suspended, and three years' probation, including a special condition of probation that the defendant not possess any animals.[8] See *State* v. *Eser*, Superior Court, judicial district of New Britain, Docket No. CR-19-0321325-S (December 3, 2021). The defendant argues that, nonetheless, the animals somehow can be removed from their permanent homes and a constructive trust can be established wherein a third party would care for the animals until the defendant's probationary term ends, and she legally is permitted to care for them. We need not decide whether we are able to afford the defendant this relief because there is practical relief that can be afforded to her should she prevail in this appeal in the form of a remand for a hearing regarding the amount of moneys paid by the defendant for the care and custody of the animals. Accordingly, because there is some practical relief that we could afford to the defendant, the present appeal is not moot. In light of this, we turn our attention to the merits of the defendant's claims.

## II

The defendant first claims that the trial court erred in denying her motion to dismiss the verified petition for lack of subject matter jurisdiction. She contends that the statutory time requirement in § 22-329a (a), which provides that a verified petition be filed within ninety-six hours after the animals are seized, is mandatory, rather than directory as the court determined, and, therefore, the plaintiff's failure to comply with that requirement deprived the trial court of subject matter jurisdiction over the petition. We conclude that the trial court was not deprived of subject matter jurisdiction.

We first note our standard of review regarding motions to dismiss. "A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard

by the court. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the court's ultimate legal conclusion and resulting [determination] of the motion to dismiss will be de novo." (Internal quotation marks omitted.) *Filippi* v. *Sullivan*, 273 Conn. 1, 8, 866 A.2d 599 (2005).

The defendant argues that the proper legal analysis for determining whether the statutory time limitation at issue serves as a subject matter jurisdictional bar involves the question, as analyzed under the factors in *Electrical Contractors, Inc.* v. *Ins. Co. of the State of Pennsylvania*, 314 Conn. 749, 757–58, 104 A.3d 713 (2014), of whether the relevant statutory provision is mandatory or directory. We disagree. Because the gravamen of the defendant's argument is that the statutory time limitation is subject matter jurisdictional, we do not examine the factors in *Electrical Contractors, Inc.*, in order to address the defendant's argument. Rather, our analysis is guided by the standards articulated in *Williams* v. *Commission on Human Rights & Opportunities*, 257 Conn. 258, 777 A.2d 645 (2001). In that case, our Supreme Court "clarified the analysis for deciding whether a time limit is subject matter jurisdictional." *Commission on Human Rights & Opportunities* v. *Savin Rock Condominium Assn., Inc.*, 273 Conn. 373, 379, 870 A.2d 457 (2005). The court stated that some prior cases incorrectly "confused the concepts of mandatory language and subject matter jurisdiction" and "at times [have] *equated* the intent of the legislature to create a mandatory limitation with the intent to create a subject matter jurisdictional limit." (Emphasis in original.) *Williams* v. *Commission on Human Rights & Opportunities*, supra, 268.

In *Williams*, the court held that the proper analysis for determining whether a statutory time limitation is a subject matter jurisdictional bar is as follows. "The question of whether a statutory time limitation is subject matter jurisdictional is a question of statutory interpretation. . . . Thus, we look to whether the legislature intended the time limitation to be jurisdictional. The legislative intent is to be discerned by reference to the language of the statute, its legislative history and surrounding circumstances, the policy the limitation was designed to implement, and the statute's relationship to the existing legislation and common law principles governing the same subject matter. . . . In light of the strong presumption in favor of jurisdiction, we require a strong showing of a legislative intent to create a time limitation that, in the event of noncompliance, acts as a subject matter jurisdictional bar." (Internal quotation marks omitted.) Id., 267.

"Although . . . mandatory language may be an indication that the legislature intended a time requirement to be jurisdictional, such language alone does not over-

come the strong presumption of jurisdiction, nor does such language alone prove strong legislative intent to create a jurisdictional bar. In the absence of such a showing, mandatory time limitations must be complied with absent an equitable reason for excusing compliance, including waiver or consent by the parties. Such time limitations do not, however, implicate the subject matter jurisdiction of the agency or the court." Id., 269–70.

We first turn to the statutory language. "As with any issue of statutory interpretation, our initial guide is the language of the statute itself." Id., 270; see also General Statutes § 1-2z. General Statutes (Supp. 2022) § 22-329a (a) provides in relevant part: "Any animal control officer or regional animal control officer . . . may take physical custody of any animal when such animal control officer has reasonable cause to believe that such animal is in imminent harm and is neglected or is cruelly treated . . . and, not later than ninety-six hours after taking physical custody, shall proceed as provided in subsection (c) of this section . . . ." Subsection (c) pertains to the filing of a verified petition alleging the neglect or cruel treatment of the animal. See General Statutes (Supp. 2022) § 22-329a (c).[9]

The use of the word "shall" in the statute is not dispositive. See *Doe* v. *West Hartford*, 328 Conn. 172, 184, 177 A.3d 1128 (2018). Although the statute provides that an animal control officer "*not later than* ninety-six hours after taking physical custody, shall proceed as provided in subsection (c) of this section"; (emphasis added) General Statutes (Supp. 2022) § 22-329a (a); the requirement to file a verified petition is otherwise stated solely in affirmative terms with no language expressly prohibiting an animal control officer from filing a verified petition after ninety-six hours have passed. Significantly, the statute does not invalidate or otherwise impose penalties in the event that a plaintiff fails to satisfy the ninety-six hour time frame for filing a verified petition. See, e.g., *United Illuminating Co.* v. *New Haven*, 240 Conn. 422, 465–66, 692 A.2d 742 (1997) ("if there is no language that expressly invalidates any action taken after noncompliance with the statutory provisions, the statute should be construed as directory" (internal quotation marks omitted)). "Traditionally, it is strong mandatory language . . . [that] is consistent with the notion of a subject matter jurisdictional limit." (Internal quotation marks omitted.) *Commissioner of Mental Health & Addiction Services* v. *Saeedi*, 143 Conn. App. 839, 850, 71 A.3d 619 (2013). We conclude that § 22-329a (a) does not contain strong mandatory language. See id.

We next turn to the legislative history of § 22-329a (a). "In light of the strong presumption in favor of jurisdiction, we require a strong showing of a legislative intent to create a time limitation that, in the event of

noncompliance, acts as a subject matter jurisdictional bar." (Internal quotation marks omitted.) *Williams* v. *Commission on Human Rights & Opportunities*, supra, 257 Conn. 267. We find no such strong showing of legislative intent.

The legislative history of § 22-329a reveals that the 2007 amendment to that statute; see Public Acts 2007, No. 07-230, § 1; substantially revised it in response to Judge Berger's criticism of the prior version of the statute in *State ex rel. Griffin* v. *Thirteen Horses*, Docket No. CV-06-4019747-S, 2006 WL 1828459 (Conn. Super. June 16, 2006).[10] In that decision, Judge Berger noted that portions of the statute were "difficult to understand because if the court has found probable cause to believe that an animal is neglected or cruelly treated, then leaving the animal in the owner's custody pending a hearing would only perpetuate its suffering. . . . One could argue that . . . the legislature did not intend to require a judicial finding in advance of the seizure . . . . If the legislature does intend to vest the seizure decision in the animal control officer, rather than in the court, the statute should be redrafted accordingly, with provisions for immediate filing of the petition and a speedy hearing." (Citations omitted.) Id., *4-5. Judge Berger concluded with respect to the prior revision of the statute that, "despite the deficiencies of the statute, the state successfully complied with its twofold obligation of obtaining a judicial determination of reasonable cause prior to seizure . . . and following the filing process . . . the state obtained the search and seizure warrant from the court . . . and filed its petition with the court . . . ." Id., *5.

When discussing the 2007 amendment on the floor of the House of Representatives, Representative Gerry Fox explained the origins of the amendment: "This bill came to us from the Commissioner of Agriculture and requested a change to the way that animal control officers currently handle situations where animals are treated cruelly or neglected. Presently, when an animal control officer sees a situation that may appear to be dangerous to an animal, they're required to go to court and get a warrant. What this would allow is if there's reasonable cause to believe that an animal [is] in imminent harm of being cruelly or negligently treated, the animal control officer may, at that time, seize the animal." 50 H.R. Proc., Pt. 25, 2007 Sess., p. 8077, remarks of Representative Gerry Fox. In support of the legislation, Representative Urban stated: "This bill makes it much easier when there is an animal that is being subjected to cruel treatment or a cruel situation to get in and to mitigate that situation and be able to move the horse, the dog, the cat, the puppy, whatever it happens to be, out of that situation and into a place where they will be able to receive the treatment they need." Id., pp. 8078–79, remarks of Representative Diana Urban. In the judiciary committee, the then Commissioner of Agri-

culture, F. Philip Prelli, explained that "the Department of Agriculture is the lead agency in investigation of animal cruelty and negligence. . . . Even if it's done on a local level, the department is involved with those. The primary purpose of [this] legislative proposal is to better define and clarify the section to enable animal control officers to take physical custody of animals that animal control officers have a reasonable cause to believe are in imminent harm and are neglected and/or being cruelly treated. One of the things that we've noticed about the law that's there, it's been a while since it's been modified, and the language tends to be language that was written a number of years ago. . . . Usually, the animal control officers will go in there and try to work with the people to either get the animals fed, get the treatment up right, so they're treated correctly, and then go to the steps. And if they still feel they need to take those steps, they will get a warrant first. So the steps we're defining here are never going to be the norm. But there are times when our animal control officers will see an animal that is truly in jeopardy of dying, and we've seen that. We've seen horses down, and we've seen cows down, where we've had to try to seize those animals and then go and get the court order. So what this does is then sets up the procedure that will give us the opportunity to seize the animals. Then within [ninety-six] hours, we will have to get a court order . . . ." Conn. Joint Standing Committee Hearings, Judiciary, Pt. 14, 2007 Sess., pp. 4422–23, remarks of Commissioner of Agriculture F. Philip Prelli.

According to the legislative history, the process in § 22-329a (a) for taking physical custody of animals in imminent harm is not the norm. Rather, the usual process is codified in § 22-329a (b), which provides in relevant part that "[a]ny animal control officer or regional animal control officer . . . may take physical custody of any animal upon issuance of a warrant finding probable cause that such animal is neglected or is cruelly treated . . . and shall thereupon proceed as provided in subsection (c) of this section . . . ." General Statutes (Supp. 2022) § 22-329a (b). Accordingly, when, prior to taking physical custody of an animal, a warrant is issued finding probable cause that such animal is neglected or cruelly treated, there is no statutory time frame for the filing of a verified petition.

It is evident that the ninety-six hour time frame in § 22-329a (a) serves to expedite the process of filing a verified petition in situations where, without first obtaining a warrant, an animal control officer takes physical custody of an animal that is reasonably believed to be in imminent harm. Although the ninety-six hour time frame serves to protect the interest of the owner in situations involving imminent harm where a warrant is not first obtained, it is clear from the legislative history that the primary purpose of § 22-329a (a) is not the protection of the owner, but rather the protec-

tion of animals from imminent harm. There is no indication from the legislative history that the legislature intended in such circumstances for the petition to be filed within the ninety-six hour time frame or not at all. If the failure to file a verified petition within the ninety-six hour time frame deprived the trial court of subject matter jurisdiction, then animals would be returned to the environment in which they were in imminent harm. This would thwart the very purpose of § 22-329a (a) by returning animals to the imminently harmful situation from which the statute sought to protect them.

The defendant argues, however, that the legislature intended the ninety-six hour time frame in § 22-329a (a) to be subject matter jurisdictional in order to reduce the costs incurred by an owner and to ensure that the animals are not kept in kennels for long periods of time. Although animals may need to be in permanent homes in order to thrive and, although an owner is responsible, pursuant to § 22-329a (h),[11] for expenses incurred by the state or municipality for the care and custody of animals if the court finds that the seized animals have been neglected or cruelly treated, the defendant's argument is weakened by the fact that there is no such time requirement in § 22-329a (b) for the filing of a petition in situations in which an animal is seized pursuant to a warrant.

In light of the statute's text, its relationship to other statutes, its legislative history and purpose, we determine that a failure to comply with the ninety-six hour period for filing a verified petition in § 22-329a (a) does not divest the trial court of subject matter jurisdiction. Accordingly, we conclude, albeit for different reasons, that the trial court correctly concluded that it had subject matter jurisdiction over the verified petition and correctly denied the defendant's motion to dismiss.

### III

The defendant next claims in the alternative that her right to procedural due process under the fourteenth amendment to the United States constitution was violated. Specifically, she argues that she "paid a shocking amount of money in this case because the [plaintiff] . . . ignored the 96 hour provision to initiate an action to seize these animals and waited 52 days, and then a hearing was not held within 14 days as required by . . . § 22-329a (d) but 198 days after the [plaintiff] seized the animals."[12] We reject this unpreserved claim.

Pursuant to *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989),[13] as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015), "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged

constitutional violation . . . exists . . . and (4) if subject to harmless error analysis, the [plaintiff] has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt.'' (Emphasis omitted; footnote omitted.) *State* v. *Golding*, supra, 239–40. "The first two [*Golding*] requirements involve a determination of whether the claim is reviewable; the second two requirements involve a determination of whether the defendant may prevail." *State* v. *George B.*, 258 Conn. 779, 784, 785 A.2d 573 (2001).

The record is adequate for review and the defendant alleges a violation of a constitutional right. Thus, we turn to the third prong in *Golding*, and focus on whether the alleged constitutional violation exists. The defendant's constitutional argument is based on the premise that § 22-329a fails to provide a meaningful postdeprivation remedy for the loss of her property. Postdeprivation remedies generally occur as a way of providing an owner with due process *after* property has been permanently disposed of out of necessity due to the lack of time to conduct a predeprivation hearing. See, e.g., *Gilbert* v. *Homar*, 520 U.S. 924, 930, 117 S. Ct. 1807, 138 L. Ed. 2d 120 (1997) (United States Supreme Court has "recognized, on many occasions, that where a [s]tate must act quickly, or where it would be impractical to provide predeprivation process, postdeprivation process satisfies the requirements of the [d]ue [p]rocess [c]lause"); *Brown* v. *Hartford*, 160 Conn. App. 677, 687–88, 127 A.3d 278 (city code that allowed for demolition of building that posed immediate danger to life or property did not violate due process where property owner afforded postdeprivation process), cert. denied, 320 Conn. 911, 128 A.3d 954 (2015). An owner may have seized animals returned pursuant to § 22-329a (g) (3), if, after a hearing, the court finds that the animals were not cruelly treated or neglected. Thomas Richard Cherry, an attorney whose practice was limited to pro bono animal advocacy, stated in his affidavit, which was attached to the plaintiff's motion for an expedited hearing on the petition, that the seized animals had been held in kennels following the defendant's arrest and that they could not be placed in permanent homes without a determination of ownership. Because a possible outcome of the procedures in § 22-329a is the return to the owner of the animals, the hearing at issue is not a postdeprivation remedy, which remedy typically follows a permanent deprivation. Nevertheless, our review of the defendant's procedural due process claim is guided by the following well established test.

"In *Mathews* v. *Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), the Supreme Court indicated that to determine the level of procedural due process necessary, we must consider three factors: (1) the private interest that will be affected by the official action, (2) the risk of an erroneous deprivation of such interest through the procedure used and the probable value, if

any, of additional substitute procedural safeguards and (3) the state's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." *Kostrzewski* v. *Commissioner of Motor Vehicles*, 52 Conn. App. 326, 336–37, 727 A.2d 233, cert. denied, 249 Conn. 910, 733 A.2d 227 (1999).

"The fundamental requisite of due process of law is the opportunity to be heard. . . . The hearing must be at a meaningful time and in a meaningful manner. . . . Inquiry into whether particular procedures are constitutionally mandated in a given instance requires adherence to the principle that due process is flexible and calls for such procedural protections as the particular situation demands. . . . Due process . . . is not a technical conception with a fixed content unrelated to time, place and circumstances." (Citation omitted; internal quotation marks omitted.) *GMAC Mortgage Corp.* v. *Glenn*, 103 Conn. App. 264, 273–74, 931 A.2d 290 (2007).

Applying the *Mathews* criteria to the present case, we conclude that although the defendant has a private interest in the ownership of her animals, the risk of erroneous deprivation from the application of the procedures in § 22-329a is low. The defendant's argument focuses on the timing of the hearing. She contends that she was not given an opportunity to be heard at a meaningful time and in a meaningful manner and that the delays in the process leading up to the hearing caused her to be "deprived . . . of $118,000 of funds, she was required to pay according to . . . § 22-329a (h)."

The defendant's argument focuses on two distinct time frames: (1) the time from the seizure of the animals until the filing of the verified petition and (2) the time from the filing of the petition until the December, 2019 evidentiary hearing on the plaintiff's petition for temporary and permanent custody of the animals and the court's order to show cause. It is not clear from the record why the plaintiff did not file the verified petition within ninety-six hours of the animal control officer taking physical custody of them. Although we do not countenance such delay, for the reasons that follow, we conclude that the defendant was not deprived of procedural due process. Regarding the second time frame, the record reveals that the defendant's own tactics[14] in the parallel criminal proceedings played a role in the delay of the December, 2019 hearing in the present case.[15] One day after the filing of the verified petition, the court, on July 19, 2019, ordered that a hearing be held on August 19, 2019, to show cause why the relief in the verified petition should not be granted. The plaintiff filed a motion for a continuance of that hearing by consent of both parties and after it became clear that a global settlement involving the defendant's willing

surrender of the animals was not possible, the plaintiff filed on November 15, 2019, a motion for an expedited hearing in the present proceeding. In an affidavit attached to the plaintiff's motion for an expedited hearing, Cherry stated that, in the criminal matter, the defendant, whom Cherry described as an "animal hoarder," consistently sought delay of all disposition hearings and, as a result of such delay in the proceedings, the animals continued to remain under the de facto care of the defendant who was paying for private kennels for the animals. Cherry further stated that the defendant was able to gain access to the animals and feed them "inappropriate food" until the criminal court ordered that she have no contact with the animals as a condition of her release.

Notwithstanding the causes of the delay in the hearing, whether due to the actions of the plaintiff or the defendant, it is undisputed that the defendant *voluntarily* paid for the care, custody and other expenses of the seized animals. At the evidentiary hearing, Helen Larkin, the owner of Larkin's Run kennel, at which the animals were housed, testified as a witness for the defendant. She stated that, starting on July 5, 2019, the defendant paid for the board and care of the animals at her kennel. She also testified as to the amount of money spent by the defendant in that regard. The court determined that "there's been evidence that the amount [the defendant] has paid or has obligated herself to pay exceeds the $15 per day per animal so the court is not going to award anything to the town on that score." The deprivation that the defendant claims to have suffered due to the procedures employed in the present case, namely, the increased cost of housing the animals at the kennel, was an obligation that the defendant assumed when she voluntarily paid for the private kenneling of the animals. It is axiomatic that the defendant cannot be unconstitutionally deprived of funds that she *voluntarily* paid.

Turning to the final factor in *Mathews* v. *Eldridge*, supra, 424 U.S. 335, we consider the plaintiff's interest, including any fiscal and administrative burdens that the additional procedural requirements would entail. The plaintiff has a significant interest in protecting the welfare of neglected or cruelly treated animals that are in imminent harm by allowing animal control officers to take physical custody of such animals immediately. On the basis of the foregoing, we conclude that the procedures set forth in § 22-392a provided the defendant with sufficient due process and consequently the defendant's claim fails under the third prong of *Golding*.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] We note that, although the legislature has amended § 22-329a since the events underlying this appeal; see Public Acts 2021, No. 21-90; those amendments have no bearing on the merits of this appeal. All references herein to § 22-329a are to the version of the statute codified in the 2022 supplement.

[2] At the evidentiary hearing, Gail Block, a veterinarian who testified for the plaintiff, characterized the condition of the animals as "horrific and upsetting and unsettling" and described the defendant's treatment of them as "neglect to the point of abuse . . . ."

[3] General Statutes (Supp. 2022) § 22-329a (c) provides: "Such officer shall file with the superior court which has venue over such matter or with the superior court for the judicial district of Hartford at Hartford a verified petition plainly stating such facts of neglect or cruel treatment as to bring such animal within the jurisdiction of the court and praying for appropriate action by the court in accordance with the provisions of this section. Upon the filing of such petition, the court shall cause a summons to be issued requiring the owner or owners or person having responsibility for the care of the animal, if known, to appear in court at the time and place named."

[4] The plaintiff, in the verified petition, and the court in its December 11, 2019 oral ruling, referred to all of the animals as "dogs," even though two cats and one parrot were also seized from the defendant's van. General Statutes § 22-327 (1) defines "[a]nimal" as "any brute creature, including, but not limited to, dogs, cats, monkeys, guinea pigs, hamsters, rabbits, birds and reptiles . . . ." It is uncontested that the court's order encompassed the noncanine animals that were seized from the defendant's van.

[5] The plaintiff argues that the defendant "is judicially estopped from seeking [the] return of the animals, as she abandoned that claim expressly" in her opposition to the plaintiff's motion to dismiss the appeal as moot, wherein, according to the plaintiff, the defendant claimed that the appeal was justiciable because her sole requested remedy was the return of moneys she had spent on the care of the animals following their seizure. "Typically, judicial estoppel will apply if: 1) a party's later position is clearly inconsistent with its earlier position; 2) the party's former position has been adopted in some way by the court in the earlier proceeding; and 3) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel. . . . We further limit judicial estoppel to situations where the risk of inconsistent results with its impact on judicial integrity is certain. . . . Thus, courts generally will not apply the doctrine if the first statement or omission was the result of a good faith mistake . . . or an unintentional error. . . . Because the rule is intended to prevent improper use of judicial machinery . . . judicial estoppel is an equitable doctrine invoked by a court at its discretion . . . ." (Citations omitted; internal quotation marks omitted.) *Assn. Resources, Inc.* v. *Wall*, 298 Conn. 145, 170–71, 2 A.3d 873 (2010). Although the defendant highlighted in her opposition that she was seeking the return of funds, she did not, as the plaintiff contends, abandon the ability to argue on appeal for the return of the animals. We decline the plaintiff's invitation to apply judicial estoppel for a number of reasons, including that the defendant's positions were not clearly inconsistent.

[6] Monde's affidavit, which was attached to the plaintiff's motion to dismiss the appeal as moot, contains this information.

[7] See, e.g., *In re David M.*, 29 Conn. App. 499, 507, 615 A.2d 1082 (1992) (at any stage of proceedings, including on appeal, court may take judicial notice of file in another case whether case is between same parties).

[8] The defendant entered into a plea agreement with the state, which the court accepted, wherein she pleaded guilty pursuant to *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), to nine counts of cruelty to animals in violation of § 53-247 (a).

[9] See footnote 3 of this opinion.

[10] See Conn. Joint Standing Committee Hearings, Judiciary, Pt. 14, 2007 Sess., p. 4426, remarks of Senator Andrew J. McDonald.

[11] General Statutes (Supp. 2022) § 22-329a (h) provides: "If the court finds that the animal is neglected or cruelly treated, the expenses incurred by the state or a municipality in providing proper food, shelter and care to an animal it has taken custody of under subsection (a) or (b) of this section and the expenses incurred by any state, municipal or other public or private agency or person in providing temporary care and custody pursuant to an order vesting temporary care and custody, calculated at the rate of fifteen dollars per day per animal or twenty-five dollars per day per animal if the animal is a horse or other large livestock until the date ownership is vested pursuant to subdivision (1) of subsection (g) of this section shall be paid by the owner or owners or person having responsibility for the care of the animal. In addition, all veterinary costs and expenses incurred for the welfare of the animal that are not covered by the per diem rate shall be paid by the owner or owners or person having responsibility for the animal."

According to § 22-329a (h), an owner is not responsible for expenses

incurred after the date that ownership vests pursuant to § 22-329a (g) (1), which provides: "If, after hearing, the court finds that the animal is neglected or cruelly treated, it shall vest ownership of the animal in any state, municipal or other public or private agency which is permitted by law to care for neglected or cruelly treated animals or with any person found to be suitable or worthy of such responsibility by the court." General Statutes (Supp. 2022) § 22-329a (g) (1).

[12] General Statutes (Supp. 2022) § 22-329a (d) provides: "If physical custody of an animal has been taken pursuant to subsection (a) or (b) of this section and it appears from the allegations of the petition filed pursuant to subsection (c) of this section and other affirmations of fact accompanying the petition, or provided subsequent thereto, that there is reasonable cause to find that the animal's condition or the circumstances surrounding its care require that temporary care and custody be immediately assumed to safeguard its welfare, the court shall either (1) issue an order to show cause why the court should not vest in some suitable state, municipal or other public or private agency or person the animal's temporary care and custody pending a hearing on the petition, or (2) issue an order vesting in some suitable state, municipal or other public or private agency or person the animal's temporary care and custody pending a hearing on the petition. A hearing on the order issued by the court pursuant to subdivision (1) or (2) of this subsection shall be held not later than fourteen days after the issuance of such order. The service of such order may be made by any officer authorized by law to serve process, state police officer or indifferent person and shall be served not less than forty-eight hours prior to the date and time of such hearing. If the owner or owners or person having responsibility for the care of the animal is not known, notice of the time and place of the hearing shall be given by publication in a newspaper having a circulation in the town in which such officer took physical custody of such animal not less than forty-eight hours prior to the date and time of such hearing."

[13] Although the defendant did not affirmatively request review pursuant to *Golding* of her unpreserved claim, we nonetheless examine the claim pursuant to that doctrine because she "need only raise that claim in [her] main brief, wherein [s]he must present a record that is [adequate] for review and affirmatively [demonstrate] that [her] claim is indeed a violation of a fundamental constitutional right." (Internal quotation marks omitted.) *State* v. *Elson*, 311 Conn. 726, 755, 91 A.3d 862 (2014).

[14] At oral argument before this court, the defendant's counsel stated, regarding the delay following the filing of the verified petition until the December, 2019 hearing, that "we don't have complete clean hands in that part of the process."

[15] The plaintiff contends that the defendant waived her due process claim by acquiescing in the delay in the proceedings, by failing to take affirmative steps to expedite the proceedings and by pursuing strategies that further delayed a hearing on the petition. In response to the plaintiff's waiver argument, the defendant in her reply brief took a position contradictory to that in her main brief and stated that she "did not challenge the delays in the hearing, only the delay in initiating the postdeprivation process, as the defense counsel did below. That is where this case begins and ends." "Waiver is the intentional relinquishment of a known right." (Internal quotation marks omitted.) *Jacobson* v. *Zoning Board of Appeals*, 137 Conn. App. 142, 150, 48 A.3d 125 (2012). Nothing in the record indicates that the defendant knowingly waived her right to claim on appeal that her right to procedural due process had been violated.